CLARENCE BATTLE v. MAJOR CLANTON, MAY LENA JOYNER AND RAYMOND STALLINGS

No. 757SC469

(Filed 3 December 1975)

1. **Rules of Civil Procedure §§ 12, 56— motion for judgment on pleadings — treatment as motion for summary judgment**
    A motion for judgment on the pleadings was inappropriate where the complaint was not fatally defective and matters outside the pleadings were presented to and considered by the court; under such circumstances the motion for judgment on the pleadings must be treated as a motion for summary judgment. G.S. 1A-1, Rule 12(c).

2. **Torts § 7— release of all parties — effect on parties not named in release**
    In an action arising from a collision between an automobile and a motorcycle on which plaintiff was a passenger, a release executed by plaintiff which specifically named the automobile driver and owner and "all other persons, firms, or corporations who are or might be liable, from all claims of any kind or character" included defendant motorcycle driver and his insurer, though they were not named specifically in the release.

3. **Torts § 7— release — entry of default judgment**
    Entry of default against defendant Stallings made on 17 February 1975 was discharged by plaintiff's release of all parties from all claims executed on 6 March 1975.

APPEAL by plaintiff from *Godwin, Judge.* Order entered 25 March 1975, Superior Court, NASH County. Heard in the Court of Appeals 22 September 1975.

Battle v. Clanton

In his Complaint, plaintiff alleged that he was a passenger on a motorcycle operated by defendant Stallings; that defendant Clanton was driving a car jointly owned by him and defendant Joyner; that the motorcycle and car approached an intersection from opposite directions; that he was injured in the collision when the car turned left into the path of the motorcycle; and that both drivers were negligent.

The defendant Clanton responded to plaintiff's interrogatories and, along with defendant Joyner, filed an answer denying negligence, asserting contributory negligence, and cross-claiming for contribution based upon Stallings' concurrent negligence.

Default was entered against defendant Stallings on 17 February 1975, but judgment by default was never entered.

Nationwide Mutual Insurance Company, insurer for defendant Stallings, then moved to intervene and to vacate the entry of default against Stallings, filed answer denying negligence on behalf of Stallings, responded to the cross-claim of defendants Clanton and Joyner against Stallings, and moved for judgment on the pleadings on behalf of Stallings.

Thereupon, defendants Clanton and Joyner settled with plaintiff by paying him their liability policy limits of $15,000, and dismissed their cross-claim. Plaintiff and his attorney executed a release. The pertinent terms of the release are set out in the opinion.

Nationwide renewed its motion for judgment on the pleadings and sought discovery of the release. Plaintiff provided a copy of the release but resisted Nationwide's intervention and attempt to vacate the entry of default against defendant Stallings. Upon receipt of the release, Nationwide amended Stallings' answer to assert the release as a bar to any further claim against Stallings and moved for summary judgment based upon the release.

All outstanding motions were heard and the court entered an order on 25 March 1975. This order allowed Nationwide to intervene and to defend on behalf of defendant Stallings, ordered that the "default judgment by the plaintiff against Raymond Stallings individually shall not be used as a basis for the plaintiff to obtain Judgment against Nationwide," allowed judgment on the pleadings on the basis of defendant Clanton's

negligence being the sole proximate cause of the accident, and allowed summary judgment on the basis of the release. On the same day plaintiff moved to be allowed to amend his complaint so as to allege other acts of negligence by the defendant Stallings, but the motion was denied.

From the foregoing order, the plaintiff appealed.

*Hubert H. Senter for plaintiff.*

*Battle, Winslow, Scott and Wiley, P.A., by J. B. Scott for defendant Stallings.*

CLARK, Judge.

[1]   A judgment on the pleadings was inappropriate. The complaint was not fatally defective, and it appears that matters outside the pleadings were presented to and considered by the court. Under these circumstances the motion for judgment on the pleadings must be treated as a motion for summary judgment. G.S. 1A-1, Rule 12(c).

[2]   Summary judgment for the defendant Stallings was entered by the trial court on the basis of the release filed by the plaintiff and his attorney in consideration of the payment of the policy limits of $15,000 made by the insurer of the defendants Clanton and Joyner. This release specifically named defendants Clanton and Joyner and *"all other* persons, firms, or corporations who are or might be liable, from *all* claims of *any kind* or character which I have or might have against it, him or them, and especially because of all damages, losses or injuries . . . [arising out of subject accident] and I hereby acknowledge full settlement and satisfaction of *all* claims of whatever kind or character which I or my heirs, executors, administrators, successors or assigns may have against it, him or them by reason of the above-mentioned damages, losses or injuries."

Plaintiff urges that the release applied only to claims against defendants Clanton and Joyner, who were specifically referred to therein; that it was not intended to release any claims against the others; and that the words "all claims of whatever kind or character" are mere surplusage.

G.S. 1B-4 provides:

"*Release or covenant not to sue.*—When a release or a covenant not to sue or not to enforce judgment is given

in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

    (1)  It does not discharge any of the other tort-feasors from liability . . . unless its terms so provide; . . . "

G.S. 1B-4 is a part of the Uniform Contribution Among Tortfeasors Act which became effective January 1, 1968, in North Carolina. It is the intent of draftsmen of such uniform acts that as much as possible, they be given uniform interpretation among those states where they are in force. *Bonar v. Hopkins,* 311 F. Supp. 130, 131 (1969), dealt with a release containing the following language:

" ' . . . sole consideration of . . . in hand paid by Valletta Inclan have released and discharged . . . and all other persons, firms or corporations from all claims . . . resulting . . . from an accident . . . . ' "

The court determined that this language was all inclusive and released even those who paid no consideration for the release. "[W]here, from the terms of the release, it must be apparent to the claimant that its execution forecloses further compensation from any source, the result is one voluntarily accepted by the claimant himself." Bonar, *supra,* at 134. By its terms, the release in the case at bar released all other persons, the latter term reasonably including the defendant, Stallings.

Other authorities are in accord with the proposition that a general release to all whomsoever bars further suits against other entities involved in the occurrence which produced the settlement with one participant that led to the release. In *Peters v. Butler,* 253 Md. 7, 251 A. 2d 600 (1969) decided under the Uniform Act adopted in Maryland, it was held that a release given to an automobile driver who struck a low brick wall marking the boundary of an apartment house parking lot, causing it to collapse on plaintiff's leg, also released the apartment owner which maintained the wall on its grounds, even though the owner paid nothing for the release and was not expressly named therein, since the instrument also released, as in the present case, " ' all other persons, firms or corporations liable or who might be claimed to be liable . . . on account of all injuries, known and unknown . . . which have resulted or may in the future develop' from the accident," and further provided, as in the present case, "that it was executed 'for the

---

---

express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.' " 251 A. 2d at 601.

In *Panichella v. Pennsylvania Railroad Co.*, 268 F. 2d 72 (3rd Cir. 1959), *cert. denied*, 361 U.S. 932 (1960), the railroad directed its employee to go to a restaurant, eat breakfast, and bring back lunch for other employees. While en route the employee slipped and fell on an icy sidewalk abutting Warner Brothers' property. Warner Brothers' insurance company negotiated a settlement with the employee, and the latter released Warner Brothers and all other persons, firms and corporations of and from any and all claims, etc., arising by reason of the accident. The court held that the release barred the employee's F.E.L.A. claim against the railroad, although it was not named in the release and had no knowledge of the settlement or of the release until over a month after its execution. Commenting upon this case in *Canillas v. Joseph H. Carter, Inc.*, 280 F. Supp. 48, 53 (S.D. N.Y. 1968), Judge Bryan, in discussing the three rules as to joint tortfeasors—the common law rule that a release to one releases others, the Restatement rule that a release to one releases all unless there is a reservation of right, and the Uniform rule that the release of one does not discharge others from liability unless the release so provides—said of the *Panichella* release: "There, the release . . . expressly provided for the discharge of all other persons, firms and corporations from liability, and thus was a bar under any of the three rules which have been mentioned."

In *Hasselrode v. Gnagey*, 404 Pa. 549, 172 A. 2d 764 (1961), also decided under the Uniform Act, Hasselrode sustained injuries when Carnegie's automobile, in which he was a passenger, collided with a dairy company truck. Hasselrode executed a release to Carnegie discharging him and "any and all other persons . . . from any and every claim" resulting from the collision. In holding that the quoted language also released the dairy company, the court stated: "The intent of the parties must be gleaned from the language of the release: such language clearly and unequivocally shows the intent of the parties that Hasselrode was releasing his claims not only against Carnegie but against 'any and all' persons, including the Dairy Company, involved in the accident of August 24, 1956." 172 A. 2d at 765. In commenting on this case, Corbin states: "All such persons enjoy the benefits of a release for which they gave nothing, and of which they knew nothing, as third party donee

beneficiaries. And this rule was adopted and applied in a juris-
diction (England) that even today denies that any one not in
'privity' can be a third party beneficiary of any contract." 4
Corbin, Contracts, § 931, p. 254, n. 54 (Supp. 1971).

A similar covenant not to sue, containing much the same
language as the release in this case, was construed in *Sell v.
Hotchkiss,* 264 N.C. 185, 186, 141 S.E. 2d 259, 260 (1965):
" . . . the undersigned . . . does hereby covenant and agree to
forever refrain from instituting . . . any claim or suit against
. . . *and* . . . all other persons, firms and corporations for whose
acts and to whom they or any of them might be liable, . . . "
Further in the agreement appears the phrase on which the
*Sell* decision rests, and which distinguishes the case at bar: "that
all rights which the undersigned may have to proceed against
all parties other than said parties are expressly reserved; . . . "
Applying this language to G.S. 1B-4 would mean that the "terms
so provide" that there is a reservation of rights to sue.

We hold that the subject release, by its express terms, pro-
vided for the discharge and release of all other tortfeasors from
all other claims resulting from the subject release on 10 August
1974, including both the defendant Stallings and his insurer,
Nationwide Mutual Insurance Company.

[3] The order appealed from provided that the court took no
action with respect to the entry of default (erroneously referred
to as default judgment) against the defendant Stallings, but
added that the default entry "shall not be used as a basis . . .
to obtain judgment against Nationwide Mutual Insurance Com-
pany." An entry of default was made by the Clerk of Superior
Court on 17 February 1975. The release was executed by the
plaintiff and his attorney on 6 March 1975. An entry of default
under G.S. 1A-1, Rule 55(a) is only an interlocutory act looking
toward the subsequent entry of a final judgment by default and
is more in the nature of a formal matter. Shuford, N. C. Civil
Practice and Procedure, § 55-3 (1975). The defendant had the
right to notice of hearing under Rule 55(b)(2) before default
judgment, and the judge could set aside the default entry under
Rule 55(d) for good cause shown. At most, the effect of the
entry of default was a finding of liability; at least, the defend-
ant Stallings had the right to appeal and defend on the yet
undetermined issue of damages. Therefore, at the time of execut-
ing the release, the plaintiff had a claim for damages against
the defendant Stallings and this claim was discharged by the

release. And though the trial court in its order found that it was taking no action with respect to the entry of default, the order thereafter rendered summary judgment in favor of both the defendant Stallings and Nationwide Mutual Insurance Company and dismissed the action against them.

Affirmed.

Judges BRITT and PARKER concur.